Filed 6/9/22  J.B.B. Investment Partners v. Fair CA1/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| J.B.B. INVESTMENT PARTNERS, LTD. et al., <br><br>     Plaintiffs and Appellants, <br><br> v. <br><br> R. THOMAS FAIR et al., <br><br>     Defendants and Appellants. | A160098 <br><br> (San Mateo County <br> Super. Ct. No. 19CIV06345) |

This is our fifth opinion arising from litigation initiated in 2013 by J.B.B. Investment Partners, Ltd. (JBB) and Silvester Rabic (collectively, plaintiffs) against R. Thomas Fair, Bronco RE Corporation (Bronco), BRE Boulevard (Boulevard) and BRE Cameron Creek LLC (Cameron) (collectively, Fair defendants).  Plaintiffs successfully sued the Fair defendants to enforce a settlement agreement between the parties.  In 2019, plaintiffs filed another lawsuit, against both the Fair defendants and their attorneys, asserting abuse of process and other claims related to the protracted underlying litigation.  The attorneys filed a motion to strike under the anti-SLAPP statute (Code Civ. Proc., § 425.16)[1] and requested fees as the prevailing party

---

[1] Further undesignated statutory references will be to the Code of Civil Procedure.

1

on the motion.  The trial court granted the motion only as to the abuse of process claim and denied the fee request.

Plaintiffs now appeal the grant of the motion as to the abuse of process claim; the attorneys cross-appeal the denial of the motion as to the other claims, as well as the denial of their fee request.  We affirm the order as to the abuse of process claim, but reverse as to the other claims and fee request. We remand for a determination of the amount to which defendants are entitled.

**BACKGROUND**[2]

### The Parties

Fair, an attorney and inactive member of the California State Bar, is the founder of Bronco, which is the managing member of Cameron. Boulevard[3] and Cameron were formed as Arizona limited liability companies (LLCs) in 2007, each owning apartment units in Arizona.  (*J.B.B. Investment Partners IV*, *supra*, 37 Cal.App.5th at pp. 4–5.)  Patrick Baldwin and Christopher Mader, of the Baldwin Mader Law Group (collectively, attorneys or attorney defendants), represented the Fair defendants in the underlying litigation and continue to do so.

Plaintiff JBB is a limited partnership based in Atherton, California, and plaintiff Rabic is an individual investor.  (*J.B.B. Investment Partners IV*,

---

[2] The factual and procedural background is taken in part from our prior opinions in *J.B.B. Investment Partners, Ltd. v. Fair* (2014) 232 Cal.App.4th 974, 978 (*J.B.B. Investment Partners I*); *J.B.B. Investment Partners, Ltd. v. Fair* (Jan. 25, 2017, A145221) 2017 WL 361077 [nonpub opn.] (*J.B.B. Investment Partners II*); *J.B.B. Investment Partners, Ltd. v. Fair* (Feb. 5, 2019, A152143) 2019 WL 442389 [nonpub. opn.] (*J.B.B. Investment Partners III*); *J.B.B. Investment Partners, Ltd. v. Fair* (2019) 37 Cal.App.5th 1 (*J.B.B. Investment Partners IV*).

[3] Boulevard is not involved in the present appeal.

*supra*, 37 Cal.App.5th at p. 5.) In late 2007 and early 2008, they invested in Boulevard and Cameron, and became members of the LLCs. (*Ibid.*)

### Prior Action on Settlement Agreement

After making these investments, plaintiffs "asserted they had discovered that defendants had made various fraudulent representations and omissions, and the parties attempted to negotiate a settlement of their dispute." (*J.B.B. Investment Partners IV*, *supra*, 37 Cal.App.5th at p. 5.) On July 4, 2013, a demand letter was e-mailed to Fair in which a final settlement offer was made (July 4 offer). On July 5, after receiving no response, plaintiffs filed a lawsuit against the Fair defendants. (*Ibid.*)

Later that same day, Fair responded to the demand letter by e-mail, stating that he agreed to settle the matter. (*J.B.B. Investment Partners IV*, *supra*, 37 Cal.App.5th at p. 5.) Fair repeated his acceptance of the July 4 offer several times in e-mails and voice messages to the attorneys for JBB and Rabic. (*Ibid.*) Fair, however, subsequently failed to sign a draft of the final settlement. (*Ibid.*)

### J.B.B. Investment Partners I

Plaintiffs filed a motion pursuant to section 664.6 to enforce the settlement, which plaintiffs argued they had entered into through the July 4 and 5 e-mail exchanges between Fair and counsel for plaintiffs. (*J.B.B. Investment Partners IV*, *supra*, 37 Cal.App.5th at p. 5.) Defendants filed a motion to stay the action and compel arbitration pursuant to the arbitration provision contained in each LLC operating agreement. (*Ibid.*) The trial court granted the plaintiffs' motion and denied the motion to compel arbitration. (*Ibid.*) Defendants appealed solely from the trial court's order granting the motion to enforce the settlement. (*Ibid.*) We reversed in *J.B.B. Investment Partners I*, concluding that Fair's printed name on the document sought to be

enforced as a settlement was not a signature for purposes of section 664.6. (*J.B.B. Investment Partners IV*, at p. 6.)

### J.B.B. Investment Partners II

After plaintiffs filed their amended complaint, the Fair defendants filed a second motion to compel arbitration. (*J.B.B. Investment Partners IV, supra,* 37 Cal.App.5th at p. 6.) The trial court denied the motion, finding it was " 'an untimely and improper request for reconsideration' of the prior order denying defendants' motion to compel arbitration" and "defendants had 'engaged in extensive litigation activities which indicate a waiver of their right to arbitrate claims arising out of the alleged Operating Agreements.' " (*Ibid.*) We affirmed in *J.B.B. Investment Partners II*.

### J.B.B. Investment Partners III

The Fair defendants filed a cross-complaint in 2017, alleging causes of action for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of Business and Professions Code section 17200, breach of fiduciary duty, negligent and intentional infliction of emotional distress, and false imprisonment. (*J.B.B. Investment Partners IV*, *supra*, 37 Cal.App.5th at p. 6.) Plaintiffs filed an anti-SLAPP motion to strike. (*Ibid.*) The trial court granted the motion and awarded plaintiffs $12,609 in attorney fees and costs. (*Ibid.*) We affirmed the order in *J.B.B. Investment Partners III*.

### J.B.B. Investment Partners IV

Plaintiffs moved for summary adjudication related to the July 5, 2013 settlement agreement on its breach of contract claim.[4] (*J.B.B. Investment*

---

[4] Plaintiffs also moved for summary adjudication on their promissory estoppel claim, which the trial court denied and plaintiffs subsequently dismissed. (*J.B.B. Investment Partners IV*, *supra*, 37 Cal.App.5th at p. 7.)

*Partners IV*, *supra*, 37 Cal.App.5th at p. 7.) The trial court granted the motion as to plaintiffs' breach of contract claim, finding as a matter of law that " 'on July 5, 2013, [Fair], on behalf of himself and the three entity defendants, entered into a binding settlement agreement with plaintiffs. Defendants thereafter breached the agreement by refusing to recognize and comply with the terms of the settlement.' "[5] (*Ibid.*) The trial court entered a final judgment awarding plaintiffs $475,424.12.

We affirmed in *J.B.B. Investment Partners IV* and imposed sanctions of $44,654.64 on the Fair defendants and their attorneys for bringing a frivolous appeal. (*J.B.B. Investment Partners IV*, *supra*, 37 Cal.App.5th at pp. 7, 15, 21.) We noted that the case had begun almost six years before, "with a settlement offer to which Fair—a licensed attorney—agreed in writing some *six times*." (*Id.* at p. 17.) We cited examples of the defendants' prior conduct relevant to our determination, including "repeated attempts to arbitrate this matter, together with a tardy appeal to this court of one of the trial court's orders denying their motion to arbitrate"; offering of " 'misleading quotes, taken out of context from the demand letter' " to support their claims in *J.B.B. Investment Partners III*; raising a similar argument on summary adjudication and in *J.B.B. Investment Partners IV* that we rejected in *J.B.B. Investment Partners III*; using "misleading partial quotes" and distorting our opinion in *J.B.B. Investment Partners I*; and repeating "completely meritless arguments raised in the trial court and in their opening brief on *J.B.B. Investment Partners IV*, in which they "offered selective facts, misrepresented the record, and/or argued completely inapplicable law." (*Id.* at pp. 17–18.)

---

[5] The trial court determined that its grant of summary adjudication on this cause of action extinguished the plaintiffs' other causes of action, and thus granted their motion for summary adjudication for release of those claims. (*J.B.B. Investment Partners IV*, *supra*, 37 Cal.App.5th at p. 7.)

5

We concluded that " 'any reasonable attorney would agree that the appeal is totally and completely without merit' " and imposed sanctions against both the defendants and their attorneys because "[d]efendants—through Fair, an inactive member of the State Bar of California—*and* their attorneys initiated an appeal that was totally meritless, following a lengthy history of dubious litigation, which they doggedly pursued over many years despite Fair's repeated and insistent acceptance of an offer to settle this case at its inception, in July 2013." (*Id.* at p. 20.)

***Current Action***

In 2019, plaintiffs filed this action against Fair, Bronco, Cameron, and Baldwin Mader, as well as attorneys Baldwin and Mader in their individual capacity. The operative complaint asserts causes of action for abuse of process, breach of fiduciary duty, legal malpractice, constructive fraud, conversion, and declaratory relief.

The first cause of action for abuse of process alleged that despite accepting the 2013 settlement agreement "at least seven (7) times," Fair and Cameron reneged and pursued an "aggressive litigation strategy, with the advice and cooperation of Defendants' Counsel, against Plaintiffs with the ulterior motive of avoiding the terms of the Settlement Agreement." It alleged, as stated in *J.B.B. Investment Partners IV*, that "there was no legal or factual basis whatsoever" for the defendants' refusal to honor the settlement agreement, and the defendants' litigation efforts were "at best, delay tactics, and abuses of the judicial process" used "to obtain an unjustifiable collateral advantage over Plaintiffs, improperly forcing them to accumulate significant legal costs and undergo lengthy and exhaustive cycles of proceedings in the hopes that Plaintiffs would cease their attempts to obtain the terms Defendants agreed to in the Settlement Agreement."

The second, third, and fourth causes of action alleged shareholder derivative claims by plaintiffs as minority shareholders in Cameron and on behalf of themselves and "all of the other shareholders in Cameron Creek, and for the benefit of Cameron Creek, pursuant to the provisions of California Corporations Code section 800."[6] The second cause of action for breach of fiduciary duty alleged that defendants' actions wasted Cameron's assets by expending hundreds of thousands of dollars in legal fees to assert frivolous positions and denying or delaying the settlement agreement without any basis. The third cause of action for legal malpractice, and the fourth cause of action for constructive fraud, were asserted against the attorney defendants only. These claims incorporated the above allegations of wrongdoing.

The fifth and sixth causes of action were asserted against Fair, Cameron and Bronco. The fifth cause of action for conversion alleged that plaintiffs were entitled to certain distributions from Cameron that had not been made. The sixth cause of action for declaratory relief sought a judicial declaration as to whether plaintiffs remained owners of equity interests in Cameron "as a result of the enforcement by the Court of the Settlement Agreement as a final judgment."

The attorney defendants subsequently filed an anti-SLAPP motion to strike plaintiffs' first four causes of action. The Fair defendants joined the

---

[6] While the second cause of action is not expressly titled as "derivative" in the operative complaint, as are the third and fourth causes of action, it contains the same allegation that the claim is made "on behalf of Plaintiff and all of the other shareholders in Cameron Creek, and for the benefit of Cameron Creek, pursuant to the provisions of California Corporations Code section 800." Plaintiffs analyzed this second cause of action as a derivative claim in their opposition to the anti-SLAPP motion, and confirm in their brief that it is also a derivative claim.

7

motion.[7]  The trial court granted the motion as to the cause of action for abuse of process, but denied it as to the other causes of action.  Plaintiffs filed their notice of appeal.[8]  The attorney defendants and Fair defendants filed their notices of cross-appeal shortly thereafter.[9]

## DISCUSSION

### I. *Plaintiffs' Appeal*

We begin with plaintiffs' appeal challenging the order granting the anti-SLAPP motion as to their first cause of action for abuse of process.

The anti-SLAPP statute provides "a procedural remedy to dispose of lawsuits that are brought to chill the valid exercise of constitutional rights."

---

[7] Joinder was granted as to the first and second causes of action only, as the third and fourth causes of action were not asserted against the Fair defendants.

[8] We reject defendants' argument that Rabic forfeited his right to appeal because JBB is the only plaintiff who filed a notice.  While the notice only includes JBB in the space for the name of the appealing party, it was filed by an attorney referenced for both plaintiffs and indicates an appeal from the order on "Plaintiffs' Special Motion to Strike."  A notice of appeal "must be liberally construed" and "is sufficient if it identifies the particular judgment or order being appealed."  (Cal. Rules of Court, rule 8.100(a)(2).)  This rule of liberal construction "applies to defects in the notice's designation of the parties to the appeal," including "a party who was omitted from the notice entirely."  (*K.J. v. Los Angeles Unified School Dist.* (2020) 8 Cal.5th 875, 885; *Toal v. Tardif* (2009) 178 Cal.App.4th 1208, 1216–1217.)  Rabic and JBB were represented by the same attorneys and presented the same arguments in the underlying action.  In their appellate briefs, the law firm is listed as representing both parties and refers to "appellants" in the plural.  Defendants suggest no prejudice resulting from the failure to expressly list Rabic as an appealing party in the notice.  We thus construe the notice of appeal as having been filed on behalf of both JBB and Rabic, and assume defendants' arguments apply to both plaintiffs.

[9] The Fair defendants have not filed separate briefs in this court, but instead filed a notice of joinder in the attorney defendants' combined brief.

8

(*Rusheen v. Cohen* (2006) 37 Cal.4th 1048, 1055–1056 (*Rusheen*).)  A defendant may thus file a special motion to strike claims "arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue."  (§ 425.16, subd. (b)(1).)

Resolution of an anti-SLAPP motion requires the court to engage in the now familiar two-step process.  " 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.' "  (*Taus v. Loftus* (2007) 40 Cal.4th 683, 712.)  If the court finds a showing has been made under the first step, " 'it then determines whether the plaintiff has demonstrated a probability of prevailing on the claim.' "  (*Ibid.*)  We review a trial court's order denying an anti-SLAPP motion de novo.  (*Rusheen, supra*, 37 Cal.4th at p. 1055.)

## A.  *First Step*:  *Abuse of Process Claim Arose from Protected Activity*

Plaintiffs argue that their abuse of process cause of action did not arise from protected activity by characterizing the claim as founded on defendants' "baseless acts" taken to repudiate the settlement agreement and abusive litigation tactics, and not on the content of any filing or statement in litigation.

"A claim arises from protected activity when that activity underlies or forms the basis for the claim."  (*Park v. Board of Trustees of California State University* (2017) 2 Cal.5th 1057, 1063–1064.)  "Critically, 'the defendant's act underlying the plaintiff's cause of action must *itself* have been an act in furtherance of the right of petition or free speech.' "  (*Ibid.*)  Thus, "a claim may be struck only if the speech or petitioning activity *itself* is the wrong complained of, and not just evidence of liability or a step leading to some different act for which liability is asserted."  (*Id.* at p. 1060.)  Section 425.16,

9

subdivision (e) defines an " 'act in furtherance of a person's right of petition' " to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law, (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Defendants bear the burden "to identify what acts each challenged claim rests on and to show how those acts are protected under a statutorily defined category of protected activity." (*Bonni v. St. Joseph Health System* (2021) 11 Cal.5th 995, 1009 (*Bonni*).)

"The common law tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed. . . . It has been 'interpreted broadly to encompass the entire range of "procedures" incident to litigation.' " (*Rusheen*, *supra*, 37 Cal.4th at pp. 1056–1057.) "To succeed in an action for abuse of process, a litigant must establish that the defendant (1) contemplated an ulterior motive in using the process, and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Id.* at p. 1057.)

Plaintiffs' complaint alleged that after Fair accepted the settlement agreement multiple times, he and Cameron reneged and pursued "an aggressive litigation strategy, with the advice and cooperation of Defendants' Counsel" and "with the ulterior motive of avoiding the terms of the Settlement Agreement." The "entire history of this litigation was frivolous and baseless because there was a binding and effective settlement reached literally on the day this case was filed, and all of the Defendants efforts were, at best, delay tactics and abuses of the judicial process. Several of those delay tactics, even if not done to delay a settlement, were independently

abuses of process as well." Defendants "misused multiple judicial processes," including by "filing three appeals which had no merit, filing false statements under oath, filing a Strategic Lawsuit Against Public Participation, filing an improper, duplicative Motion to Compel Arbitration after a previous denial of a Motion that was substantively the same, by opposing entry of summary judgment under the Settlement Agreement without any basis . . . and by generally aggressively litigating the Underlying Case in spite of the Settlement Agreement." "Each new filing" in the underlying action and appeals was alleged to "represent[] a separate abuse of process taken for the ulterior motive of delaying and/or preventing compliance" with the settlement agreement.

It is apparent from these allegations that all the conduct alleged to constitute an abuse of process involves the filing of documents in court and associated litigation activity, acts clearly protected under section 425.16, subdivision (e). (*Rusheen*, *supra*, 37 Cal.4th at p. 1056 [" 'Any act' includes communicative conduct such as the filing, funding, and prosecution of a civil action" and "includes qualifying acts committed by attorneys in representing clients in litigation"].)

Plaintiffs offer three arguments to the contrary, none of which we find persuasive. First, plaintiffs attempt to avoid this conclusion by characterizing the court filings as evidence of an underlying substantive wrong (baseless repudiation of the settlement agreement) and not themselves the cause of the harm plaintiffs claimed (delayed enforcement of the settlement agreement and attorney fees incurred in the underlying litigation). (*City of Alhambra v. D'Ausilio* (2011) 193 Cal.App.4th 1301, 1307 (*D'Ausilio*) [courts must "distinguish between (1) speech or petitioning activity that is mere *evidence* related to liability and (2) liability that is *based*

11

*on* speech or petitioning activity"].) Plaintiffs claim they were not harmed by the *content* of defendants' filings and arguments in court, which were simply means of achieving delay.[10] But, unlike the situation in *D'Ausilio*,[11] the court filings and arguments in the underlying litigation are not just evidence related to liability: they are necessarily the acts and communications upon which the abuse of process claim was based.

Second, plaintiffs cite *JBB* to argue that the defendants' litigation conduct was illegal and therefore outside the protection of the anti-SLAPP statute. In that decision, we explained that the "history of this case and the indisputable 'total lack of merit' of this appeal provide strong evidence of defendants' subjective intent, i.e., that they ' "must have intended it only for delay." ' " (*JBB Investment Partners IV*, *supra*, 37 Cal.App.5th at p. 19.)

---

[10] To support this argument, plaintiffs quote the trial court's tentative ruling, which is not part of the record on appeal and was replaced by the trial court's contrary final decision. Plaintiffs' reply brief asks us to take "special judicial notice" of the tentative ruling, as well as several Governor's executive orders and emergency rules of court pertaining to COVID-19. As to the tentative ruling, we deny the request as plaintiffs did not provide a copy of the ruling and failed to seek judicial notice through the required separate motion. (Cal. Rules of Court, rule 8.252(a).) Although we take judicial notice of the emergency orders and rules to the extent they are matters for mandatory judicial notice (Evid. Code, §§ 451 & 459), plaintiffs fail to state what relevance these orders and rules have to this appeal and we are aware of none. (Cal. Rules of Court, rule 8.252(a)(2)(A).)

[11] In *D'Ausilio*, the defendant participated in a protest and was then sued by the city for violating a prior agreement to not engage in specified conduct in support of city employees. *D'Ausilio* affirmed the denial of the defendant's anti-SLAPP motion, explaining that " 'the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity.' " (*D'Ausilio*, *supra*, 193 Cal.App.4th at p. 1307.) The city did not sue the defendant "because he engaged in protected speech," but rather, "because it believed he breached a contract which prevented him from engaging in certain speech-related conduct." (*Id.* at p. 1308.)

12

Plaintiffs rely upon *Lefebvre v. Lefebvre* (2011) 199 Cal.App.4th 696, which concluded that section 425.16 does not extend to filing a false police report in violation of the Penal Code, an illegal activity that is "not in furtherance of constitutionally protected speech or petition rights." (*Lefebvre*, at p. 704.)

Defendants' conduct in this litigation, while baseless and sanctionable, was not *criminal.* In *Flatley v. Mauro* (2006) 39 Cal.4th 299, the California Supreme Court made clear that a defendant is precluded from using the anti-SLAPP statute where the assertedly protected speech or petition activity is illegal as a matter of law. (*Flatley*, at p. 320.) Courts have repeatedly interpreted the term "illegal" from *Flatley* to mean "criminal, not merely violative of a statute." (E.g., *Price v. Operating Engineers Local Union No. 3* (2011) 195 Cal.App.4th 962, 971; *Finton Construction, Inc. v. Bidna & Keys, APLC* (2015) 238 Cal.App.4th 200, 210–211; *Bergstein v. Stroock & Stroock & Lavan LLP* (2015) 236 Cal.App.4th 793, 806–807 (*Bergstein*).) We agree with these authorities.

Third, plaintiffs argue their abuse of process cause of action is not subject to an anti-SLAPP motion because it is "partially subject to SLAPPback." A "SLAPPback" is defined as "any cause of action for malicious prosecution or abuse of process arising from the filing or maintenance of a prior cause of action that has been dismissed pursuant to a special motion to strike under Section 425.16." (§ 425.18, subd. (b)(1).) An anti-SLAPP motion may not be filed against a SLAPPback by a party "whose filing or maintenance of the prior cause of action from which the SLAPPback arises was illegal as a matter of law." (§ 425.18, subd. (h).) (*Soukup v. Law Offices of Herbert Hafif* (2006) 39 Cal.4th 260, 268 (*Soukup*).) For purposes of section 425.18, subdivision (h), an "illegal act" is "an act '[f]orbidden by law,' "

13

which may include non-criminal statutory violations. (*Soukup*, at p. 283 & fn. 12; *Bergstein*, *supra*, 236 Cal.App.4th at pp. 808–809.)[12]

Plaintiffs argue that the anti-SLAPP motion is barred here to the extent their allegations attack defendants' "statutory violations" and relate to the 2017 cross-complaint stricken in the prior action.[13] Defendants maintain there is no such thing as a partial SLAPPback, citing *Hutton v. Hafif* (2007) 150 Cal.App.4th 527. *Hutton*, however, did not address the concept of "partial SLAPPback" plaintiffs advance here. *Hutton* concluded that section 425.18, subdivision (h) did not preclude an anti-SLAPP motion where the prior action was based in part on conduct that did not violate any statute and, therefore, the plaintiff failed to prove the prior action was " 'illegal as a matter of law' not 'partially illegal' as [plaintiff] suggests." (*Hutton*, at p. 545.)

Even if applicable, we are unpersuaded that the requirements of section 425.18, subdivision (h) are met here. To satisfy this provision, a plaintiff must "identify with particularity the statute or statutes violated by the filing and maintenance of the underlying action" and, absent a concession from the defendant, the illegality must be "conclusively established by the evidence presented in connection with the motion to strike." (*Soukup*, *supra*, 39 Cal.4th at pp. 286–287.) Here, the full extent of plaintiffs' argument is that "sanctions were awarded for [the defendants'] illegal conduct" that

---

[12] *Bergstein* made clear that this interpretation of "illegal act" under section 425.18, subdivision (h) was limited to the particular context of SLAPPbacks and did not apply to the rule established in *Flatley*. (*Bergstein, supra,* 236 Cal.App.4th at pp. 808–809.)

[13] Plaintiffs refer to statutes providing for the imposition of sanctions based on improper actions (e.g., frivolous, bad faith, solely intended to cause unnecessary delay), citing sections 128.5, 128.7, and 907, and contend defendants were sanctioned for "illegal conduct" violating these statutes.

14

"violated multiple statutes governing the Court's ability to award sanctions. See e.g. [Code of Civil Procedure sections] 128.5, 128.7, 907." But conduct warranting sanctions—i.e., "actions or tactics, made in bad faith, that are frivolous or solely intended to cause unnecessary delay" (§ 128.5, subd. (a))— is not the sort of affirmatively unlawful or illegal conduct section 425.18, subdivision (h) was intended to reach. (*Soukup*, at pp. 289–290 [rejecting argument that "sham" lawsuit came within § 425.18, subd. (h) exemption].)

## B. *Second Step: No Probability of Prevailing on the Merits*

The second step of the anti-SLAPP analysis requires us to decide whether plaintiffs have demonstrated a probability of prevailing on their abuse of process claim. This determination follows a " 'summary-judgment-like procedure.' " (*Taus v. Loftus*, *supra*, 40 Cal.4th at p. 714.) The court does not weigh evidence or resolve conflicting factual claims. (*Ibid.*) Its inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. (*Ibid.*) It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. (*Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 819–820.) On this step, plaintiffs argue that defendants egregiously misused court processes by groundlessly repudiating the settlement agreement and using meritless motions and appeals and mischaracterization of the facts to force plaintiffs to endure years of delay and incur hundreds of thousands of dollars in attorney fees in order to enforce the settlement.

As earlier stated, an abuse of process requires the plaintiffs to establish that the defendant (1) "contemplated an ulterior motive in using the process" and (2) "committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Rusheen*, *supra*, 37 Cal.4th at p. 1057.)

15

"The gist of the tort is the *misuse* of the power of the court:  It is an act done under the authority of the court for the purpose of perpetrating an injustice, i.e., a perversion of the judicial process to the accomplishment of an improper purpose."  (*Younger v. Solomon* (1974) 38 Cal.App.3d 289, 297.)  "Some definite act or threat not authorized by the process or aimed at an objective not legitimate in the use of the process is required.  And, generally, an action lies only where the process is used to obtain an unjustifiable *collateral advantage*.  For this reason, mere vexation or harassment are not recognized as objectives sufficient to give rise to the tort."  (*Ibid.*)

The case law is clear that "mere filing or maintenance of a lawsuit— even for an improper purpose—is not a proper basis for an abuse of process action."  (*Oren Royal Oaks Venture v. Greenberg, Bernhard, Weiss & Karma, Inc.* (1986) 42 Cal.3d 1157; *Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 520 (*Ramona*).)[14]  Moreover, " 'merely taking a frivolous appeal is not enough to constitute an abuse of process' " and there is no liability where the defendant " 'has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions.' " (*Tellefsen v. Key System Transit Lines* (1961) 198 Cal.App.2d 611, 615; see also *Coleman v. Gulf Ins. Group* (1986) 41 Cal.3d 782, 792 [abuse of process claim insufficient where based on alleged filing of a meritless appeal to cause delay and coerce settlement].)

So too here.  Defendants used the court process to resist plaintiffs' action.  Even if defendants' litigation conduct was vexatious or sanctionable, it does not satisfy the elements for an abuse of process claim.  Indeed, " '[t]he

---

[14] Plaintiffs attempt to distinguish *Ramona* on the ground that the defendant in that case had initiated the underlying action.  (*Ramona*, *supra*, 135 Cal.App.4th at p. 522.)  This factual distinction is not relevant to the question whether defendants misused the court process.

16

policy of the rule is obvious. If the wrongful conduct of a defendant causing the plaintiff to sue him would give rise to an independent tort and a separate cause of action, there would be no end to the litigation, for immediately upon the entry of judgment the plaintiff would start another action . . . ." (*California Physicians' Service v. Superior Court* (1992) 9 Cal.App.4th 1321, 1325, fn. 2.) We thus conclude the anti-SLAPP motion was properly granted as to this abuse of process because plaintiffs have not demonstrated a likelihood of prevailing on the merits of their abuse of process claim.[15]

Given this conclusion, we need not address defendants' additional arguments that the cause of action is barred by the statute of limitation and litigation privilege. We note, however, that the applicability of the latter defense is apparent given the acts upon which the abuse of process claim are necessarily based upon are filings and statements in the course of and related to the underlying litigation. (Civ. Code, § 47, subd. (b); *Silberg v. Anderson* (1990) 50 Cal.3d 205, 212 ["The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action"].)

---

[15] Plaintiffs cannot avoid the anti-SLAPP motion by arguing that defendants' conduct meets all the elements of malicious prosecution—a point raised in a footnote of the opening brief and briefly in reply. Plaintiffs did not allege a cause of action for malicious prosecution and "cannot use an eleventh-hour amendment to plead around a motion to strike under the anti-SLAPP statute." (*Navellier v. Sletten* (2003) 106 Cal.App.4th 763, 772.) In any event, plaintiffs do not explain how they could demonstrate a probability of prevailing on the merits of a malicious prosecution claim given its first element requires that the prior action "was commenced by or at the direction of the defendant . . . ." (*Soukup, supra*, 39 Cal.4th at p. 292.)

17

## II. *Defendants' Cross-Appeal*

We turn next to defendants' cross-appeal arguing the trial court erred in denying their anti-SLAPP motion as to the second, third, and fourth causes of action and in denying their request for attorney fees.

## A. *First Step*: *Derivate Claims Arose from Protected Activity*

As described above, the second, third, and fourth causes of action alleged derivative claims asserted by plaintiffs on behalf of themselves and all shareholders in Cameron and for the benefit of Cameron. Each of these claims is based on the theory that defendants wasted corporate resources by pursing the baseless underlying litigation, incurring much greater expenses than would have been required if they had abided by the settlement agreement.[16]

The trial court described the "thrust" of these three claims as the defendants being "engaged in 'overly aggressive' litigation" to avoid or delay paying the amounts due under the settlement agreement. The claims were based on defendants' conduct in litigating the underlying action "unnecessarily," "asserting frivolous claims," and failing to disclose to their client that the motions, appeals, and cross-complaint "lacked merit, but were filed anyway." While these acts are generally within the scope of a person's " 'right of petition,' " the court concluded that the claims were not based on activity protected by the anti-SLAPP statute because they were claims by a client against its own attorneys. The court explained: " 'It is unreasonable to interpret [the anti-SLAPP statute] to include a client's causes of action against the client's own attorney arising from litigation-related activities

___

[16] We reject plaintiffs' assertion that the anti-SLAPP motion challenged only the third cause of action. The record reflects that the motion to strike was expressly directed at all three of these claims and plaintiffs addressed all of them in their opposition.

18

undertaken for that client.' (*PrediWave Corp. v. Simpson Thacher & Bartlett LLP* (2009) 179 Cal.App.4th 1204, 1227, 1228; see also *Chodos v. Cole* (2012) 210 Cal.App.4th 692.)" It continued: " 'In a malpractice suit, the client is not suing because the attorney petitioned on his or her behalf, but because the attorney did not competently represent the client's interests while doing so. Instead of chilling the petitioning activity, the threat of malpractice encourages the attorney to petition competently and zealously.' (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1540.)"

We agree with defendants that the trial court was overly focused on the nature of the derivative claims instead of the acts underlying them. " '[T]he anti-SLAPP statute's definitional focus is not the form of the plaintiff's cause of action but, rather, the defendant's *activity* that gives rise to his or her asserted liability—and whether that activity constitutes protected speech or petitioning.' " (*Peregrine Funding, Inc. v. Sheppard Mullin Richter & Hampton LLP* (2005) 133 Cal.App.4th 658, 671.) "[A] court considering a special motion to strike must examine the allegedly wrongful conduct itself, without particular heed to the form of action within which it has been framed." (*Ibid.*) In other words, when a plaintiff alleges "various acts as a basis for relief and not merely as background, each act or set of acts must be analyzed separately under the usual two-step anti-SLAPP framework." (*Bonni*, *supra*, 11 Cal.5th at p. 1012.) The determination cannot be based on the "gravamen approach" of determining whether based on identifying the "essence or gist" of the cause of action. (*Id.* at pp. 1010–1011, 1012, fn. 2.)[17]

---

[17] *Bonni* accepted use of a gravamen approach only as a means to "determine whether particular acts alleged within the cause of action supply the elements of a claim" or instead are "incidental background . . . ." (*Bonni*, *supra*, 11 Cal.5th at p. 1012.)

Here, as the trial court correctly observed, the *acts* upon which these three derivate claims were based fell within the scope of protected activity: filing a cross-complaint, multiple appeals, and motions for a stay, to compel arbitration and for sanctions. Defendants' "baseless" and protracted litigation was not just the background of plaintiffs' claims; without the litigation conduct, their claims would not exist.

*Wittenberg v. Bornstein* (2020) 50 Cal.App.5th 303 (*Wittenberg*) illustrates the necessary distinction. In *Wittenberg*, the plaintiff asserted causes of action for breach of fiduciary duty and conspiracy against the attorney who had previously represented a company co-owned by plaintiff and was now representing the other co-owner in litigation. (*Id.* at p. 307.) The claims were based on the attorney's representation of clients with adverse interests and use of the company's confidential information for that new representation. (*Id.* at p. 314.) *Wittenberg* concluded that these acts did not constitute protected activity; the litigation conduct was "merely incidental" to the alleged conduct supporting the attorney's purported breaches of his fiduciary and professional obligations. (*Ibid.* ) On the other hand, claims arising from the attorney's preparation and filing of a request to dismiss the company's cross-complaint arose from activity protected under section 425.16. (*Wittenberg*, at p. 315; see also *O&C Creditors Group, LLC v. Stephens & Stephens XII, LLC* (2019) 42 Cal.App.5th 546, 567 [claims against attorneys for settling lawsuit and disbursing funds in derogation of a lien, cast as wrongful disbursement of settlement funds, arose from protected settlement activity because claims were "founded upon and would not exist in absence of the protected settlement activity"]; *Contreras v. Dowling* (2016) 5 Cal.App.5th 394, 411 [claim against landlord's attorney alleging he aided and abetted entry into tenant's apartment arose from protected activity

20

where specific acts shown were advising client and writing letter to opposing counsel]; *Bergstein*, *supra*, 236 Cal.App.4th at p. 811 [although framed as aiding and abetting breach of fiduciary duty by plaintiffs' former counsel, who assisted defendant attorneys in litigation against plaintiffs, claims arose from protected activity because " 'specific acts of alleged wrongdoing' in the complaint are litigation activities"].)

The legal malpractice cases relied upon by the trial court are distinguishable because they established, in effect, an exemption from the anti-SLAPP statute that is not applicable here. (*PrediWave v. Simpson Thacher & Bartlett LLP*, *supra*, 179 Cal.App.4th at pp. 1227–1228 (*PrediWave*); *Chodos v. Cole*, *supra*, 210 Cal.App.4th at pp. 696–697, 702–703; *Kolar v. Donahue, McIntosh & Hammerton*, *supra*, 145 Cal.App.4th at pp. 1537–1538.) *PrediWave* concluded that the anti-SLAPP statute does not apply to "clients' causes of action against attorneys based upon the attorneys' acts on behalf of those clients" because those causes of action are not being brought to chill the valid exercise of speech or petitioning activity. (*PrediWave*, at p. 1227.) Other kinds of actions, including "clients' causes of action against attorneys based upon statements or conduct solely on behalf of different clients" and "nonclients' causes of action against attorneys" are protected. (*Ibid.*; see also *Thayer v. Kabateck Brown Kellner LLP* (2012) 207 Cal.App.4th 141, 158.)

We are not persuaded that the derivative claims in this case fall within the *PrediWave* exemption because they are based on actions taken in the prior litigation on behalf of Cameron *against plaintiffs*. In practical effect, plaintiffs seek to impose liability on Cameron's attorneys for litigation conduct on Cameron's behalf that harmed plaintiffs. In *Wittenberg*, the appellate court focused on the alleged conduct and did not utilize the

21

*PrediWave* framework upon determining that it did not "fall squarely" within any one of those categories. (*Wittenberg*, *supra*, 50 Cal.App.5th at p. 315.) We do the same here and conclude that the derivative claims arise from protected litigation activity.

## B. *Second Step:* *No Probability of Prevailing on the Merits*

Defendants argue that plaintiffs cannot demonstrate a probability of prevailing on the derivative claims for three reasons: (1) plaintiffs failed to show standing to bring a derivative claim; (2) derivative suits for malpractice are barred; and (3) the claims are barred by the litigation privilege. The first of these is dispositive.

On this second step of the anti-SLAPP analysis, plaintiffs bear the burden "to demonstrate that each challenged claim based on protected activity is legally sufficient and factually substantiated" and "must demonstrate this probability of success with admissible evidence." (*Laker v. Board of Trustees of California State University* (2019) 32 Cal.App.5th 749, 768.)

"[E]lements for standing 'are not mere pleading requirements but rather an indispensable part of the plaintiff's case' " and thus " 'each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.' " (*Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1345; *Major v. Silna* (2005) 134 Cal.App.4th 1485, 1498 [anti-SLAPP motion should have been granted where plaintiff failed to demonstrate standing and therefore failed to carry burden of demonstrating probability of prevailing on merits]; *Muddy Waters, LLC v. Superior Court* (2021) 62 Cal.App.5th 905, 924, fn. 9 [same].)

As plaintiffs acknowledge, a shareholder has standing to enforce the rights of a corporation through a derivative action only while he or she maintains stock ownership. (*Grosset v. Wenaas* (2008) 42 Cal.4th 1100, 1114–1115 (*Grosset*).) *Grosset* explained the rationale for this rule: "If successful, a derivative claim will accrue to the direct benefit of the corporation and not to the stockholder who litigated it. [Citations.] Because a derivative claim does not belong to the stockholder asserting it, standing to maintain such a claim is justified only by the stockholder relationship and the indirect benefits made possible thereby, which furnish the stockholder with an interest and incentive to seek redress for injury to the corporation. [Citations.] Once this relationship ceases to exist, the derivative plaintiff lacks standing because he or she 'no longer has a financial interest in any recovery pursued for the benefit of the corporation.' [Citations.]" (*Id.* at p. 1114.)

Defendants argue that plaintiffs did not, and cannot, demonstrate they meet the continuous ownership requirement because the settlement agreement terminated their interests in Cameron.[18] Although defendants do not point to any specific language in the agreement, we look to the second paragraph of the July 4, 2013 e-mail delineating the terms of the agreement.

---

[18] We reject any suggestion by plaintiffs that this argument is forfeited for failure to raise it in the trial court proceedings. "It is well settled that a party may raise the issue of standing for the first time on appeal." (*Steadman v. Osborne* (2009) 178 Cal.App.4th 950, 954–955.) On an anti-SLAPP motion, a plaintiff is not deprived of the ability to present evidence on standing because the defendant did not argue this point and retains the burden to produce such evidence to show a probability of prevailing on his or her claim. (*Muddy Waters, LLC v. Superior Court*, *supra*, 62 Cal.App.5th at p. 924, fn. 9.) Plaintiffs obviously knew the question of their continued ownership interests in Cameron was disputed, as this was the subject of their sixth cause of action for declaratory relief.

This provision states: "You must enter a Stipulated Judgment for $350,000 which is the full bore amount of all amounts invested, all interest, all fees, all costs and everything else which Stipulated Judgment will be held in escrow and not entered if payment is timely made in accord with the next paragraph." According to this provision, payment of the stipulated amount would constitute full reimbursement of plaintiffs' investment in Cameron. And it would certainly appear that once that investment was returned, plaintiffs would no longer be members of the LLC. Given that plaintiffs were awarded $475,424.12 on their cause of action for breach of the settlement agreement, it appears that plaintiffs no longer hold ownership interests in Cameron and have failed to meet their burden on standing.

Plaintiffs offer three arguments to the contrary, none of which we find persuasive. First, plaintiffs contend that there is no language in the settlement agreement granting their ownership interests to defendants or anyone else "without actual cash delivery as required by the express terms of the Settlement Agreement" and that the agreement cannot be interpreted as terminating their status as shareholders "until at least all of the monies owed to them per the agreement have been paid." The record reflects, however, that all payments due under the settlement agreement *have* been paid through the $475,424.12 judgment. Indeed, plaintiffs filed a satisfaction of judgment, confirming "full satisfaction" of the judgment. The present lawsuit was filed after the conclusion of the prior litigation and the operative complaint in this action was filed after the satisfaction of judgment. At that point, plaintiffs had received all payment due under the settlement agreement, which expressly constituted return of "all amounts invested, all interest, all fees, all costs and everything else."

24

Second, plaintiffs suggest that there is some other payment owed apart from the settlement agreement: amounts they believe are due as profits on their investment. This assertion appears to refer to their fifth cause of action for conversion, alleging plaintiffs had not received any of the disbursements promised as a result of their investment in Cameron or more specifically, the proportional distributions other investors received when the real property that was Cameron's sole asset sold in 2018. JBB's general partner submitted a declaration to the trial court stating that neither he nor Rabic received any of the disbursements reported on tax forms (K-1s), and that JBB never received the "8% priority income return per year" it was promised prior to investing in Cameron. Rabic's declaration similarly states he never received any portion of the promised "8% priority per year." We are not persuaded by plaintiffs' contention that their continued ownership interests are demonstrated by the K-1s defendants provided to them. The validity of the settlement agreement continued to be disputed well into 2019. (*J.B.B. Investment Partners IV*, *supra*, 37 Cal.App.5th 1, review den. Oct. 9, 2019.) Defendants had little choice but to provide the K-1s to plaintiffs, since they would have remained members of the LLC if defendants had prevailed in their attempts to disprove the settlement agreement.

Third, plaintiffs ask us to apply an equitable exception to the requirement of continuous ownership for standing to maintain derivative claims. While California law "generally requires a plaintiff in a shareholder's derivative suit to maintain continuous stock ownership throughout the pendency of the litigation," *Grosset* explained that equitable considerations may warrant an exception where a merger "is used to wrongfully deprive the plaintiff of standing, or if the merger is merely a reorganization that does not affect the plaintiff's ownership interest." (*Grosset*, *supra*, 42 Cal.4th at

25

p. 1119.)  Similarly, in *Haro v. Ibarra* (2009) 180 Cal.App.4th 823, the appellate court determined that equitable considerations warranted an exception where the plaintiffs alleged they were wrongfully deprived of their shares pursuant to a scheme to force them out by imposing unique assessments on them and declaring their shares forfeited when they refused to pay.  (*Id.* at pp. 836–837.)

Here, the equitable considerations stemming from defendants' alleged litigation conduct do not directly implicate plaintiffs' ownership interests so as to trigger the exception contemplated by *Grosset* and applied in *Haro*.  Plaintiffs sued the Fair defendants and entered a settlement agreement providing for full repayment of their investment in Cameron.  If they ultimately lost ownership interests in Cameron, it was pursuant to the settlement agreement; there is nothing in the record to indicate that defendants' litigation of the validity of that agreement constituted a scheme to wrongfully deprive plaintiffs of their ownership interests.

## C.  *Request for Attorney Fees*

Defendants argue the trial court erred in denying their request for attorney fees on the ground that they did not prevail on all causes of action.  Section 425.16, subdivision (c)(1) provides, with certain exceptions not relevant here, "a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs."  Given our conclusion that the anti-SLAPP motion should have been granted as to all causes of action, we conclude defendants are entitled to recover their fees and costs.

We are again unpersuaded by plaintiffs' argument that the mandatory attorney fees provision is inapplicable because their case is a SLAPPback. (§ 425.18, subd. (c) [fees provision in section is inapplicable to SLAPPback]; *Hutton v. Hafif, supra*, 150 Cal.App.4th at p. 539 [same].)  As discussed

26

above, plaintiffs characterize their case as a SLAPPback based on the cross-complaint stricken in the prior action, but that filing was just one of the acts upon which plaintiffs based their abuse of process claim and they offer no authority or analysis for their position that section 425.18 applies to a "partial" SLAPPback.

We thus conclude that the trial court erred in denying the defendants' request for attorney fees and remand the matter to determine the amount of the attorney fees to be awarded to defendants.

## DISPOSITION

The anti-SLAPP order is affirmed as to its grant of the motion to strike count one of the amended complaint, but reversed as to its denial of the motion as to counts two, three, and four of the amended complaint with directions to enter an order granting the motion as to these causes of action. The denial of defendants' request for attorney fees is reversed and the matter remanded for a determination of the amount of fees to which defendants are entitled.

Costs awarded to Fair.

27

_____
Mayfield, J.*

We concur:

_____
Richman, Acting P.J.

_____
Stewart, J.

*J.B.B. Investment Partners, LTD et al. v. Fair et al.* (A160098)

     *Judge of the Mendocino Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.