Filed 1/29/26  Parize v. Long Beach Memorial Medical Center CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| MARIA PARIZE et al., | B339531, B342700 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. 22LBCV00495) |
| v. | |
| LONG BEACH MEMORIAL MEDICAL CENTER et al., | |
| Defendants and Respondents. | |

APPEALS from orders of the Superior Court of Los Angeles County, Michael Shultz, Judge. Affirmed.

California Land Law and Richard J. Cowles for Plaintiffs and Appellants.

Godes & Preis, Joseph M. Preis and Oliver B. Dreger for Defendant and Respondent Long Beach Memorial Medical Center.

Shogo Garcia, in pro. per., and for Defendants and Respondents Law Offices of Yoshida & Garcia, Law Offices of T. Mae Yoshida and T. Mae Yoshida.

* * * * * *

Plaintiffs and appellants Maria Parize and Marco Parize (collectively, appellants) appeal from the order granting the respective special motions to strike pursuant to Code of Civil Procedure section 425.16 (anti-SLAPP motion)[1] of defendants and respondents Long Beach Memorial Medical Center (Long Beach Memorial) and Law Offices of T. Mae Yoshida, Law Offices of Yoshida & Garcia, T. Mae Yoshida, and Shogo Garcia (collectively, respondents).[2] Further, appellants appeal from the order granting Long Beach Memorial's motion for judgment on the pleadings. We conclude there is no reversible error and affirm the orders.

## BACKGROUND

**The personal injury lawsuit**

In December 2015, appellants were injured in an automobile accident. Appellants received medical care at Community Hospital Long Beach (CHLB), a branch of Long Beach Memorial. In January 2016, appellants filed a personal injury lawsuit in Los Angeles County Superior Court (BC606992).

---

[1]     All undesignated statutory references are to the Code of Civil Procedure.

[2]     Appellants also appeal Long Beach Memorial's motion for attorney's fees and the orders awarding respondents' respective requests for costs in connection with the anti-SLAPP motions.

2

In February 2016, respondents served hospital liens on appellants pursuant to Civil Code section 3045.1 to collect for the medical services performed at CHLB. The personal injury case settled and was dismissed in August 2019.

In January 2020, appellants filed an interpleader action against respondents in Los Angeles County Superior Court (20LBCV00068). Appellants alleged an interpleader was required because there were multiple claims to the two settlement checks appellants received from the personal injury action. These claims allegedly exceeded the proceeds of the two settlement checks.

In August 2021, a bench trial was held on the interpleader action. In September 2021, the trial court entered judgment in favor of appellants on their claims for interpleader, declaratory relief, and injunctive relief, while denying their remaining seven causes of action. The court ruled the hospital liens were to be expunged and respondents were enjoined from further litigating the hospital charges, bills, and accounts for the medical services provided to appellants for the 2015 automobile accident.

**The malicious prosecution lawsuit**

In September 2022, appellants brought a single cause of action for malicious prosecution against respondents based on their prosecution of the hospital liens during the personal injury matter. Two months later, appellants amended their complaint, after which Long Beach Memorial moved for judgment on the pleadings. Appellants alleged in their amended complaint that the hospital liens were based upon improper and false billings known by respondents. Despite allegedly having such knowledge, respondents continued to prosecute the hospital liens and acted without probable cause. Appellants alleged the hospital liens prevented them from accessing the settlement funds and paying

3

for their legal representation. The pleadings indicated the hospital liens were expunged in the prior interpleader action.

Long Beach Memorial contended in its motion for judgment on the pleadings that a malicious prosecution action could not be based on the mere service of a hospital lien because the latter did not constitute commencing an action or a civil proceeding. Long Beach Memorial argued the lawsuit had no merit because there were no allegations any actual proceeding was ever initiated against appellants. Further, Long Beach Memorial asserted appellants could not maintain any claims for malicious prosecution because they only obtained a partial victory in the interpleader action.

In opposition, appellants maintained respondents relied on inapposite legal authority and cited no cases establishing that a malicious prosecution could not be based on the hospital liens. Further, appellants argued respondents' affirmative defense of litigation privilege did not apply to malicious prosecution actions. Appellants also posited the interpleader action's outcome could be a basis for malicious prosecution because the hospital liens were entirely disallowed and appellants were determined to be the prevailing party.

In January 2024, the trial court heard the motion for judgment on the pleadings.[3] The court granted the motion with leave to amend.

In February 2024, appellants filed a second amended complaint (SAC). In the SAC, appellants replaced their malicious prosecution claim with a single cause of action for abuse of

---

[3] The trial court also heard a motion for sanctions Long Beach Memorial filed, but appellants do not raise that motion in this appeal.

process. In addition to the facts previously alleged, the SAC provided more details as to the background of the two prior lawsuits. The SAC detailed the medical service charges and alleged respondents refused to bill appellants' insurance in order to avoid their reduced rates of payment. Appellants allegedly were forced to file the interpleader action after receiving collection notices from Medicare due to respondents wrongfully prosecuting the hospital liens. The SAC alleged respondents "used the legal procedure of maliciously prosecuting and asserting Hospital Liens related in the PI LAWSUIT, which necessitated the INTERPLEADER LAWSUIT." Further, it was alleged respondents "intentionally used this legal procedure to improperly assert and maliciously prosecute the Hospital Liens to fraudulently attempt to collect amounts not due, charges for services that were not reasonable or necessary, charges that should have been submitted to Medicare and Blue Shield PPO, and seek amounts well above that which they were entitled to receive by Medicare and Blue Shield PPO." Appellants alleged respondents continued to prosecute the hospital liens even after accepting payment from appellants' insurance for the same services.

**The anti-SLAPP motions**

Later in February 2024, Long Beach Memorial filed an anti-SLAPP motion as to the SAC. Long Beach Memorial contended the service and filing of the hospital liens were protected activities under the anti-SLAPP statute. Long Beach Memorial argued it was permitted to preserve its rights against third party liability insurance carriers under the Hospital Lien Act (Civ. Code, §§ 3045.1–3045.6). Long Beach Memorial asserted

5

appellants' claim was also based on settlement discussions, another protected activity under the anti-SLAPP statute.

Long Beach Memorial maintained appellants could not show a probability of prevailing on the merits of their claim because litigation privilege barred the claim. Long Beach Memorial also posited the doctrine of res judicata or collateral estoppel barred appellants' action because the SAC raised issues already adjudicated in the prior matters. In addition, Long Beach Memorial contended appellants failed to plead an abuse of process claim because there were no allegations Long Beach Memorial employed any process of the court.

In opposition, appellants argued their claim was not based on protected activity because it was already decided in the interpleader action that Long Beach Memorial had no lien rights to assert. Appellants contended the hospital liens constituted unlawful balance billing because Long Beach Memorial asserted the liens after billing and receiving payment from Medicare. Further, appellants maintained the anti-SLAPP motion was untimely filed because the allegations relating to the protected activity had appeared in their prior pleadings.

Appellants posited there was a probability they would prevail on the merits because Long Beach Memorial, with an ulterior motive, willfully used the court process to assert an invalid hospital lien to obtain payment at rates far exceeding those to which it was entitled. Appellants contended res judicata did not bar their claim because the issue of abuse of process was not ripe until the ruling in the interpleader action. Appellants also argued they stated a sufficient claim because Long Beach Memorial had admitted its involvement in the underlying personal injury action and the allegations show Long Beach

6

Memorial used the court process to cause harm to appellants. In addition, appellants maintained Long Beach Memorial was not entitled to attorney's fees and costs for bringing the motion because appellants asserted their claim in good faith.

In March 2024, Law Offices of T. Mae Yoshida, Law Offices of Yoshida & Garcia, T. Mae Yoshida, and Shogo Garcia filed a separate anti-SLAPP motion on substantially the same grounds as Long Beach Memorial's motion.

In May 2024, the trial court heard respondents' anti-SLAPP motions. The court granted respondents' anti-SLAPP motions and dismissed the entire case.[4] The court found the hospital liens and related communications were protected activities because they constituted statements, writings, or pleadings made in connection with civil litigation. Further, the court found appellants failed to show a probability of prevailing on the merits because litigation privilege protected respondents' assertion of the hospital liens in connection with the personal injury action. The court also concluded collateral estoppel barred appellants' claim because abuse of process could have been raised at the time they commenced the interpleader action.

In July 2024, Long Beach Memorial filed a separate motion for attorney's fees for its successful anti-SLAPP motion.[5] In

---

[4]     Long Beach Memorial had also filed a demurrer to the SAC, but the court took this matter off calendar as moot.

[5]     In June 2024, respondents filed their respective memorandum of costs, to which there were no objections. It does not appear respondents Law Offices of T. Mae Yoshida, Law Offices of Yoshida & Garcia, T. Mae Yoshida, and Shogo Garcia moved for attorney's fees.

7

October 2024, the trial court granted the motion but awarded an amount in attorney's fees less than the amount requested.

Appellants timely appealed.[6]

## CONTENTIONS ON APPEAL

Appellants assert five main arguments. First, appellants contend the SAC does not implicate any protected activity under the anti-SLAPP statute because it was already decided in the interpleader action that Long Beach Memorial had no lien rights to assert. Appellants argue respondents' conduct constituted unlawful balance billing because they sought to assert a lien after billing and receiving payment from Medicare. Second, appellants assert the trial court erred in ruling on the anti-SLAPP motions because they were untimely. Third, appellants maintain respondents were judicially estopped from bringing the anti-SLAPP motions. Fourth, appellants posit they have a probability of prevailing on the merits of their action for abuse of process because the evidence demonstrates respondents used the court's process to assert invalid liens to wrongfully obtain payments. Finally, appellants contend the court erred in granting Long Beach Memorial's motion for judgment on the pleadings because appellants sufficiently pled a malicious prosecution claim.

## DISCUSSION

### I. Standard of review and applicable law

""We review de novo a ruling on a special motion to strike under section 425.16. [Citation.] Thus, we apply our independent

---

[6] This court granted appellants' motion to consolidate appeals, ordering appeal Nos. B339531 and B342700 consolidated under appeal No. B339531.

judgment, both to the issue of whether the cause of action arises from a protected activity and whether the plaintiff has shown a probability of prevailing on the claim."'" (*Balla v. Hall* (2021) 59 Cal.App.5th 652, 671 (*Balla*).) "An appellant still bears the "'burden of affirmatively demonstrating error.'"" (*Ibid*.)

"In evaluating an anti-SLAPP motion, courts conduct a two-step analysis. First, the court decides whether a defendant has met its 'burden of establishing that the challenged allegations or claims "aris[e] from" protected activity in which the defendant has engaged.'" (*Manlin v. Milner* (2022) 82 Cal.App.5th 1004, 1017–1018 (*Manlin*).) "For these purposes, protected activity 'includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law[;] (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law[;] (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest[;] or (4) any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' (§ 425.16, subd. (e).)" (*Id*. at p. 1018.)

"Second, if a defendant meets its burden on the threshold showing, the court decides if the plaintiff 'has established that there is a probability that the plaintiff will prevail on the claim.' (§ 425.16, subd. (b)(1).)" (*Manlin*, *supra*, 82 Cal.App.5th at p. 1018.) "To satisfy this burden, the plaintiff "'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable

9

judgment if the evidence submitted by the plaintiff is credited.'"'" (*Ibid*.) "At the second step, the court's 'inquiry is limited to whether the plaintiff has stated a legally sufficient claim and made a prima facie factual showing sufficient to sustain a favorable judgment. It accepts the plaintiff's evidence as true, and evaluates the defendant's showing only to determine if it defeats the plaintiff's claim as a matter of law. [Citations.] "[C]laims with the requisite minimal merit may proceed."'" (*Balla, supra*, 59 Cal.App.5th at p. 671.)

"'Analysis of an anti-SLAPP motion is not confined to evaluating whether an entire cause of action, as pleaded by the plaintiff, arises from protected activity or has merit. Instead, courts should analyze each claim for relief—each act or set of acts supplying a basis for relief, of which there may be several in a single pleaded cause of action—to determine whether the acts are protected and, if so, whether the claim they give rise to has the requisite degree of merit to survive the motion.'" (*Manlin, supra*, 82 Cal.App.5th at p. 1018.) "'[T]o the extent any acts are unprotected, the claims based on those acts will survive.'" (*Ibid*.)

## II. Appellants' lawsuit is based on protected activity under the anti-SLAPP statute

### A. *Prosecuting the hospital liens is protected activity*

"Among other types of communications, the anti-SLAPP statute protects 'any written or oral statement or writing made before a legislative, executive, or judicial proceeding' (Code Civ. Proc., § 425.16, subd. (e)(1)) or 'in connection with an issue under consideration or review' in such proceedings (*id*., subd. (e)(2)). Statements made in preparation for litigation or in anticipation of bringing an action fall within these categories." (*RGC*

*Gaslamp, LLC v. Ehmcke Sheet Metal Co., Inc.* (2020) 56 Cal.App.5th 413, 425 (*RGC Gaslamp*).) "If a statement falls into one of these categories, a defendant does not separately need to show that his or her statement was made in connection with a 'public issue.'" (*Ibid.*) "The anti-SLAPP protection for petitioning activities applies not only to the filing of lawsuits, but extends to conduct that relates to such litigation, including statements made in connection with or in preparation of litigation." (*Kolar v. Donahue, McIntosh & Hammerton* (2006) 145 Cal.App.4th 1532, 1537.)

We conclude appellants' action is based on protected activity under the anti-SLAPP statute because it arises from respondents' hospital liens, which were writings made before a judicial proceeding or in connection with an issue under consideration in such proceeding. The SAC alleged "[t]he Hospital Liens were commenced, prosecuted and served by [respondents] maliciously and without probable cause [appellants] are therefore is [*sic*] entitled to an award of exemplary or punitive damages." Respondents allegedly "used the legal procedure of maliciously prosecuting and asserting Hospital Liens related" to the personal injury matter and this allegedly compelled appellants to bring the interpleader action. Appellants alleged respondents "intentionally used this legal procedure to improperly assert and maliciously prosecute the Hospital Liens to fraudulently attempt to collect" payment to which they were not entitled. Appellants alleged they were harmed by the foregoing conduct.

Given the aforementioned allegations, it is clear respondents' filing and prosecution of the hospital liens form the bases of appellants' claim. The allegations show the liens were filed in connection with appellants' claim for damages in their

11

personal injury lawsuit, which was an issue under consideration or review by a judicial body. Accordingly, the allegations fall squarely within protected activity under section 425.16, subdivision (e)(1) and (2) of the anti-SLAPP statute. Appellants present nothing disputing this.

Further, a lien is protected under the anti-SLAPP statute when it acts as a prelitigation statement preparatory to filing a judicial proceeding. (See *RGC Gaslamp, supra*, 56 Cal.App.5th at p. 426 ["The filing of a mechanic's lien is a necessary prerequisite to bringing a foreclosure action. ([Civ. Code,] § 8460.) As such, it is a protected prelitigation statement preparatory to filing a judicial proceeding."].) Here, under the Hospital Lien Act, respondents could only assert the hospital liens upon the damages recovered "if the person [injured by reason of an accident or negligent or other wrongful act] has a claim against another for damages on account of his or her injuries." (Civ. Code, § 3045.1.) The hospital liens were enforceable by filing an action against the person, firm, or corporation making the payment for the medical care and services rendered to the injured person. (*Id.*, § 3045.5.) Thus, the hospital liens were prelitigation statements preparatory to filing a judicial proceeding.

Appellants contend their claim is not based on protected activity because it was ruled in the interpleader action that Long Beach Memorial had no lien rights to assert. Appellants argue respondents' conduct constituted unlawful balance billing as they asserted the hospital liens after receiving payment from Medicare. However, "[a]t the first prong, courts consider whether a defendant has made a prima facie showing that activity underlying a plaintiff's causes of action is statutorily protected, 'not whether it has shown its acts are ultimately lawful.'" (*RGC*

12

*Gaslamp, supra*, 56 Cal.App.5th at pp. 425–426.) Appellants' contentions here only address the merits of the hospital liens, not whether the liens are protected under the anti-SLAPP statute.

Appellants further argue the prosecution of the hospital liens is not protected because the evidence conclusively establishes the conduct is illegal or wrongful given the interpleader judgment ruled respondents had no lien rights. Appellants cite *Birkner v. Lam* (2007) 156 Cal.App.4th 275 (*Birkner*) and *Kashian v. Harriman* (2002) 98 Cal.App.4th 892, contending the hospital liens fall within the illegal conduct exception to the anti-SLAPP statute.

The illegal conduct exception, as *Birkner, supra*, 156 Cal.App.4th at page 285 indicates, was recognized in the California Supreme Court case, *Flatley v. Mauro* (2006) 39 Cal.4th 299. It was held in *Flatley* that the anti-SLAPP statute does not apply if "the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law." (*Flatley, supra*, at p. 320.)

However, "the Supreme Court's use [in *Flatley*] of the phrase 'illegal' was intended to mean criminal, and not merely violative of a statute." (*Mendoza v. ADP Screening & Selection Services, Inc.* (2010) 182 Cal.App.4th 1644, 1654.) Nothing in this matter shows the hospital liens were criminal in nature. Indeed, as discussed above, the liens are established by statute for hospitals with respect to damages recovered if an injured person has a claim against another on account of the person's injuries. (Civ. Code, § 3045.1.) Further, the liens are enforced through a lawsuit against the party making the payment for the medical services provided to the injured person. (*Id.*, § 3045.5.)

13

Accordingly, the illegal conduct exception does not apply here because respondents' prosecution of the hospital liens was entirely civil in nature.

**B.** ***Appellants cannot establish a probability of prevailing on their claim because litigation privilege applies***

Appellants assert they have a probability of prevailing on the merits of their claim for abuse of process because the evidence shows respondents used the court's process to willfully assert invalid liens to extort payments that were not due or owed. We conclude appellants cannot show a probability of prevailing because the hospital liens are subject to litigation privilege.[7]

"Under the '"usual formulation,"' the litigation '"privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that have some connection or logical relation to the action."'" (*A.F. Brown Electrical Contractor, Inc. v. Rhino Electric Supply, Inc.* (2006) 137 Cal.App.4th 1118, 1126.) "The privilege extends to 'any publication . . . that is required [citation] or permitted [citation] by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is invoked.'" (*Ibid.*) "Accordingly, courts have extended the privilege to the . . . filing of a hospital lien . . . ." (*Id.* at pp. 1126–

---

[7]     Respondents also argue the doctrines of issue and claim preclusion (or collateral estoppel and res judicata) bar appellants' instant action. However, this issue need not be considered here because appellants' claim cannot overcome litigation privilege as discussed herein.

1127, citations omitted.) "[T]he assertion of liens as authorized by validly enacted California statutes is shielded by the litigation privilege." (*Olszewski v. Scripps Health* (2003) 30 Cal.4th 798, 832.)

"To succeed in an action for abuse of process, a litigant must establish two elements: that the defendant (1) contemplated an ulterior motive in using the process; and (2) committed a willful act in the use of the process not proper in the regular conduct of the proceedings." (*Brown v. Kennard* (2001) 94 Cal.App.4th 40, 44.) "The tort of abuse of process arises when one uses the court's process for a purpose other than that for which the process was designed." (*Ibid.*) "'[T]he essence of the tort [is] . . . misuse of the power of the court; it is an act done in the name of the court and under its authority for the purpose of perpetrating an injustice.'" (*Ibid.*)

It is undisputed the hospital liens were communications made in a judicial proceeding in connection with the litigation. Appellants allege respondents abused the court's process through the very act of asserting and prosecuting the hospital liens. Indeed, appellants concede that hospital liens are protected by litigation privilege. Appellants argue the privilege does not apply to malicious prosecution, but appellants brought a claim for abuse of process. "The litigation privilege bars an abuse of process claim insofar as the claim is premised on conduct within the privilege . . . ." (*Ramona Unified School Dist. v. Tsiknas* (2005) 135 Cal.App.4th 510, 522, fn. 7.) "[Civil Code] [s]ection 47, subdivision (b)(2) is a defense to an abuse of process action. [Citations.] 'The privilege is broadly applied to protect most publications within lawsuits provided there is some connection between the lawsuit and the publication. [Citation.]' [Citations.]

15

Doubts about the privilege's applicability are resolved in favor of its use." (*Pollock v. University of Southern California* (2003) 112 Cal.App.4th 1416, 1430.)

Thus, even assuming arguendo that wrongfully asserting and prosecuting a hospital lien may constitute an abuse of process, appellants cannot demonstrate a probability of prevailing on the claim. The liens themselves are inextricably linked to the merits of appellants' claim. Appellants' arguments only involve respondents' allegedly wrongful use of the court's process to willfully assert invalid liens. Appellants fail to show how they can prevail when they are barred by litigation privilege from introducing any communications pertaining to the hospital liens.

Finally, appellants posit Long Beach Memorial was judicially estopped from asserting litigation privilege in its anti-SLAPP motion because this position was inconsistent with its argument in its motion for judgment on the pleadings that asserting the hospital liens did not constitute commencing an action or a civil proceeding.

"'Judicial estoppel is an equitable doctrine aimed at preventing fraud on the courts.' [Citation.] It prohibits a party from taking inconsistent positions in the same or different judicial proceedings." (*M. Perez Co., Inc. v. Base Camp Condominiums Assn. No. One* (2003) 111 Cal.App.4th 456, 463.) "[T]he doctrine should apply when: (1) the same party has taken two positions; (2) the positions were taken in judicial or quasi-judicial administrative proceedings; (3) the party was successful in asserting the first position (i.e., the tribunal adopted the position or accepted it as true); (4) the two positions are totally inconsistent; and (5) the first position was not taken as a result of

16

ignorance, fraud, or mistake." (*Jackson v. County of Los Angeles* (1997) 60 Cal.App.4th 171, 183.)

"'The determination of whether judicial estoppel can apply to the facts is a question of law reviewed de novo, i.e., independently [citations], but the findings of fact upon which the application of judicial estoppel is based are reviewed under the substantial evidence standard of review. [Citations.] [¶] Even if the necessary elements of judicial estoppel are found, because judicial estoppel is an equitable doctrine [citations], whether it should be applied is a matter within the discretion of the trial court. [Citations.] The exercise of discretion for an equitable determination is reviewed under an abuse of discretion standard.'" (*Miller v. Bank of America, N.A.* (2013) 213 Cal.App.4th 1, 10.)

Judicial estoppel does not apply here because Long Beach Memorial did not take positions in its motion for judgment on the pleadings wholly inconsistent with those taken in its anti-SLAPP motion. In the motion for judgment on the pleadings, Long Beach Memorial maintained that serving the hospital liens in itself did not constitute a civil action or proceeding subject to a malicious prosecution claim. In the anti-SLAPP motion, Long Beach Memorial argued the hospital liens were communications made in a judicial proceeding in connection with the litigation. These are consistent positions because serving and filing the liens can be considered communications within a civil proceeding and not an action subject to a malicious prosecution claim. The context of these issues was entirely different such that it was not wholly inconsistent for Long Beach Memorial to argue both positions in its motions.

17

Since judicial estoppel does not apply, the trial court did not abuse its discretion by deciding not to apply the doctrine to prohibit Long Beach Memorial from asserting litigation privilege in its anti-SLAPP motion. Appellants also fail to show applying judicial estoppel was needed to prevent some fraud on the court. Accordingly, it was not error to not apply judicial estoppel to the matter.

In short, we conclude the anti-SLAPP motions were properly granted.[8] Respondents' motions satisfied the first prong because the hospital liens were filed in connection with appellants' claim for damages in their personal injury action. The liens were also prelitigation statements preparatory to filing a judicial proceeding because they were enforceable through actions against those making payment for the medical care rendered to appellants. The hospital liens were therefore protected as writings made before a judicial proceeding or in connection with an issue under consideration in such proceeding under section 425.16, subdivision (e)(1) and (2). As to prong two, appellants fail to establish a probability of prevailing on the merits of their claim because litigation privilege protected the hospital liens and related communications.

C. ***Long Beach Memorial's anti-SLAPP motion was timely***

Appellants argue Long Beach Memorial's anti-SLAPP motion was untimely because it was not filed within 60 days of the initial complaint, which contained the same allegations

---

[8]     The issues raised in Law Offices of T. Mae Yoshida, Law Offices of Yoshida & Garcia, T. Mae Yoshida, and Shogo Garcia's anti-SLAPP motion are nearly identical to Long Beach Memorial's anti-SLAPP motion.

18

relating to protected activity that were in the amended complaints. Appellants contend an anti-SLAPP motion can only be brought against an amended pleading when the allegations relating to protected activity first appeared therein.

Under section 425.16, subdivision (f), an anti-SLAPP motion "may be filed within 60 days of the service of the complaint or, in the court's discretion, at any later time upon terms it deems proper." "An anti-SLAPP motion may be brought within 60 days of service of an amended complaint "'if the amended complaint pleads new causes of action that could not have been the target of a prior anti-SLAPP motion, or adds new allegations that make previously pleaded causes of action subject to an anti-SLAPP motion.'"" (*Starview Property, LLC v. Lee* (2019) 41 Cal.App.5th 203, 206.) "The rule that an amended complaint reopens the time to file an anti-SLAPP motion is intended to prevent sharp practice by plaintiffs who might otherwise circumvent the statute by filing an initial complaint devoid of qualifying causes of action and then amend to add such claims after 60 days have passed." (*Hewlett-Packard Co. v. Oracle Corp.* (2015) 239 Cal.App.4th 1174, 1192, fn. 11.) "But a rule properly tailored to that objective would permit an amended pleading to extend or reopen the time limit only as to *newly pleaded* causes of action arising from protected conduct." (*Ibid*.)

"[S]ection 425.16, subdivision (f), should be interpreted to permit an anti-SLAPP motion against an amended complaint if it could not have been brought earlier, but to prohibit belated motions that could have been brought earlier (subject to the trial court's discretion to permit a late motion). This interpretation maximizes the possibility the anti-SLAPP statute will fulfill its purpose while reducing the potential for abuse." (*Newport Harbor*

19

*Ventures, LLC v. Morris Cerullo World Evangelism* (2018) 4
Cal.5th 637, 645.)

We conclude Long Beach Memorial's anti-SLAPP motion
was timely because it was filed within 60 days after the SAC was
served. The 60-day deadline to file an anti-SLAPP motion was
reopened because appellants pled a new cause of action in the
SAC. Appellants' prior pleadings only contained a malicious
prosecution claim, while the SAC replaced that claim with a
cause of action for abuse of process.

While the allegations relating to the protected activity—
namely, the hospital liens—were present in the prior pleadings,
the same principles discussed above regarding the anti-SLAPP
motion deadline apply here. Malicious prosecution may be similar
to abuse of process, but the two causes of action have different
elements the litigant must prove. (See *Maleti v. Wickers* (2022) 82
Cal.App.5th 181, 231 ["'Malicious prosecution and abuse of
process are distinct. The former concerns a meritless lawsuit (and
all the damage it inflicted). The latter concerns the misuse of the
tools the law affords litigants once they are in a lawsuit
(regardless of whether there was probable cause to commence
that lawsuit in the first place).'"].) Thus, in defending against an
anti-SLAPP motion, a claimant's success in establishing the
probability of prevailing on a malicious prosecution claim would
not necessarily extend to abuse of process, even if the allegations
relating to protected activity are the same. It is not consistent
with the anti-SLAPP deadline principles that a defendant be
forced to file an anti-SLAPP motion he or she believes will
ultimately be unsuccessful as to one claim simply to preserve the
right to do so against a possible new claim later that is meritless
and subject to section 425.16.

Likewise, a claimant should not be allowed to hold back and later assert weaker causes of action subject to the anti-SLAPP statute after the deadline had passed. (See *Lam v. Ngo* (2001) 91 Cal.App.4th 832, 840–841 ["[T]he purpose of the anti-SLAPP suit law would be readily circumventable if a defendant's only opportunity to strike meritless SLAPP claims were in an attack on the original complaint. Causes of action subject to a special motion to strike could be held back from an original complaint . . . ."].)

In addition, we note appellants entirely fail to address how the trial court abused its discretion by ruling on the anti-SLAPP motion.[9] "A court 'enjoys considerable discretion' in determining 'whether to allow [a] late filing of an anti-SLAPP motion.'" (*San Diegans for Open Government v. Har Construction, Inc.* (2015) 240 Cal.App.4th 611, 624.) Thus, it is insufficient for appellants to simply contend an anti-SLAPP motion was untimely—appellants must show the court improperly exercised its discretion in allowing the late-filed motion. We also note, in the underlying proceeding, appellants never addressed how they would be prejudiced by allowing a late-filed anti-SLAPP motion. Appellants thus forfeit such arguments on this issue here. (See *People v. Mayham* (2013) 212 Cal.App.4th 847, 856 ["A party may

---

[9] The trial court did not address the issue of the anti-SLAPP motion's timeliness. Regardless, we must infer the court impliedly found all facts necessary to support the order and "all intendments and presumptions are indulged in favor of correctness." (See *Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58 ["The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment."].)

21

not raise an argument on appeal that he or she did not raise before the trial court."].)

## III. The trial court properly granted respondents' requests for attorney's fees and costs for the anti-SLAPP motions

Under section 425.16, subdivision (c)(1), "a prevailing defendant on a special motion to strike shall be entitled to recover that defendant's attorney's fees and costs." Since there was no error in granting the anti-SLAPP motions, the attorney's fees and costs awards for the motions should be affirmed.

Appellants contend the attorney's fees and costs should not be awarded because appellants brought their action in good faith based on legal research and valid interpretations of the law. However, appellants' argument is not supported by any law. (See *Delta Stewardship Council Cases* (2020) 48 Cal.App.5th 1014, 1075 (*Delta Stewardship*) ["When an appellant . . . asserts [a point] but fails to support it with reasoned argument and citations to authority, we treat the point as forfeited."].) The statute expressly provides that litigants prevailing on their anti-SLAPP motions are entitled to their attorney's fees and costs. There is nothing showing equitable factors, such as good faith, can be considered in determining if a prevailing moving party is entitled to its attorney's fees and costs.[10]

---

[10] For litigants who successfully defend against an anti-SLAPP motion, good faith may be a factor in determining if the litigants are entitled to their attorney's fees and costs since the motion's frivolousness must be shown. (See § 425.16, subd. (c)(1); *Durkin v. City and County of San Francisco* (2023) 90 Cal.App.5th 643, 651 ["[A] prevailing plaintiff may be entitled to attorney fees and costs if the court finds that the anti-SLAPP motion was 'frivolous or is solely intended to cause unnecessary

## IV. Appellants waived any errors in the order granting the motion for judgment on the pleadings

Appellants also appeal the order granting Long Beach Memorial's motion for judgment on the pleadings. However, appellants were granted leave to amend their pleadings, which they elected to do by filing the SAC. When litigants choose to amend their complaint pursuant to an order finding insufficient pleading and granting leave to amend, any error in the order is generally waived. (See *County of Santa Clara v. Atlantic Richfield Co.* (2006) 137 Cal.App.4th 292, 312 ["[W]here the plaintiff chooses to amend, any error in the sustaining of the demurrer is ordinarily waived."].) Thus, we conclude the order granting the motion for judgment on the pleadings should be affirmed because appellants waived any errors therein.

Appellants assert they were only given leave to amend to allege a cause of action for abuse of process and not to amend their existing malicious prosecution claim. We initially note that nothing in the record indicates the trial court's order granting leave to amend was limited to bringing an abuse of process claim. Regardless, there is nothing showing this distinction matters. Appellants waived errors in the order because they chose to file an amended complaint instead of appealing the motion. Appellants also forfeited their argument here because they cited no legal authority for their position they did not waive the errors. (See *Delta Stewardship, supra*, 48 Cal.App.5th at p. 1075.)

---

delay.'"].) However, those are not the circumstances here because appellants did not successfully defend against the anti-SLAPP motions.

23

## DISPOSITION

The orders granting the anti-SLAPP motions, including the awards of attorney's fees and costs, and the motion for judgment on the pleadings are affirmed. Respondents are awarded their costs on appeal.

CHAVEZ, Acting P. J.

We concur:

RICHARDSON, J.

SIGGINS, J.*

---

\*      Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.